UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case. No. 22-cr-86 (BAH) |
| ) | |
| MICHAEL ROCHE ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION**

Michael Roche respectfully requests that this Court reconsider its May 28, 2024 Minute Order concurring in the Probation Office's recommendation to modify his conditions of supervised release by adding two additional conditions (ECF 96). The Court erred in two respects. First, Mr. Roche's waiver of his right to counsel, a hearing, and his objections was invalid as it was neither knowingly nor voluntarily made. Mr. Roche did not understand that he was signing a document consenting to adding two *additional* supervision conditions and he was told signing these documents were necessary for release to a halfway house and supervision in his district of residence. Second, the two additional conditions—one imposing drug treatment and the other suspicionless searches—are neither "reasonably related" to the relevant statutory factors in 18 U.S.C. § 3553 nor do they "involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes" identified in those factors. *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013); *accord* 18

1

U.S.C. § 3583 (same). The Petition makes no individualized assessment to ensure compliance with this statutory mandate. Moreover, Mr. Roche has no history of recent drug use, violence, or violations on release that would reasonably warrant either condition, both of which curtail his liberty significantly. That the conditions are so unreasonable lends even more credibility to Mr. Roche's explanation that he did not knowingly and voluntarily waive his hearing and right to counsel. This Court should grant Mr. Roche's Motion to Reconsider and reject the proposed conditions. At a minimum, Mr. Roche is entitled to a hearing, as required under Federal Rule of Criminal Procedure 32.1, prior to any modifications taking effect.

## Background

On March 16, 2022, the government filed an indictment charging Mr. Roche with six counts: Obstruction of an Official Proceeding and Aiding and Abetting under 18 U.S.C. §§ 1512(c)(2) and 2 (Count One), Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Two), Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Three), Entering and Remaining on the Floor of the Congress under 40 U.S.C. § 5104(e)(2)(A) (Count Four), Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Five), and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G) (Count Six). ECF 33.

On March 10, 2023, following a stipulated bench trial, this Court convicted Mr. Roche of all counts. On June 9, 2023, Mr. Roche was sentenced to an aggregate term

of 18 months (18 months on Count 1; 12 months as to Counts 2 and 3; and 6 months as to Counts 4, 5, and 6, all to run concurrently), followed by 36 months of supervised release (36 months on count 1, and 12 months on count 2 and 3, to run concurrently). He reported to prison on July 5, 2023. ECF 94.

On March 28, 2024, this Court granted Mr. Roche's Motion for Release Pending Appeal effective July 6, 2024. ECF 94. In doing so, the Court recounted Mr. Roche's compliance with all conditions of release pending sentencing and before reporting to prison and noted that Mr. Roche did not pose a flight risk or danger to the community. *Id.* at 5–6.

On May 25, 2024, the Probation Office filed a petition requesting modifications of his special conditions to include the following two provisions:

> 1. Substance Abuse Treatment - You shall participate in, and successfully complete, a residential and/or out-patient substance abuse treatment program, which may include drug testing and detoxification service, as approved and directed by the Probation Office.
>
> 2. Search and Seizure - You must submit your person, property, house, residence, vehicle, papers, or office to a search conducted by a probation officer. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

ECF 96 at 2. The Petition stated that the justification for the additional conditions, which were not requested at the time supervised release was imposed, was due in part to the needs of the District of Arizona. *Id.* The Petition also stated:

> During his presentence investigation, Mr. Roche acknowledged multiple instances of drug use that were significantly concerning for the probation officer. Substance abuse treatment will help to address Mr.

3

> Roche's cognitions related to the use of illicit substances and maintaining sobriety. In addition, search and seizure will assist the probation office in further proactive measures to identify possible risk to the community.

*Id.* No other details, such as the nature of the "drug use," or an explanation of how the conditions were tailored to Mr. Roche's specific conduct, was provided. The Probation Petition attached a separate page, Waiver of Hearing to Modify Conditions of Supervised Release, which bore Mr. Roche's signature (dated a month prior to the rest of the Petition), waived Mr. Roche's right to a hearing and counsel, and stated that Mr. Roche agreed to the two additional proposed conditions. ECF 96 at 5. The Waiver form did not include the justification for the conditions. *Id*.

On March 28, 2024, the Court concurred with the Petition's recommended conditions.

## Argument

### I. Mr. Roche's Waiver Was Neither Knowing Nor Voluntary.

Pursuant to Federal Rule of Criminal Procedure 32.1(c), a defendant is entitled to a hearing before the court can modify conditions of supervised release. Although Rule 32.1 (c)(2)(A) allows for an exception where "the person waives the hearing," courts have uniformly held that the waiver must be knowing and voluntary. *See, e.g.*, *United States v. Poe*, 220 F. App'x 446, 448 (8th Cir. 2007); *United States v. Williams*, 321 F. App'x 486, 489–90 (6th Cir. 2009); *United States v. Hodges*, 460 F.3d 646, 651 (5th Cir. 2006); *United States v. Pelensky*, 129 F.3d 63, 68 n. 9 (2d Cir. 1997); *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999). That

4

is because "[a]s a general proposition, . . . the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made." *United States v. Correa-Torres*, 326 F.3d 18, 22 (1st Cir. 2003). A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.*

As Mr. Roche explains in the attached declaration, Exhibit A, his waiver was neither knowing nor voluntary. Although he signed the waiver form provided by a prison official, who did not explain his rights pursuant to Rule 32.1 or the legal consequences of the document, he did so as he was presented with many other forms and was told that he needed to sign the waiver so he could be released faster, released into a halfway house, and supervised in the District of Arizona. Ex. A ¶ 1-3. It was not explained to him and he did not understand that he was agreeing to add two *new* conditions of supervision. *Id.* ¶ 5. He further did not understand that he was agreeing to drug *treatment*, as opposed to testing, and the Probation Officer would have discretion as to the type and duration of that treatment. *Id.* ¶ 4, 6. Indeed, he could conceivably end up in in-patient treatment for his entire three years of supervised release with no assessment of whether he even had a drug problem in the first place. He also did not understand that he was giving blanket permission for Probation to search his property, person, and possessions, which

would include the property of his those in whose house he would be residing. *Id.* ¶ 7. Finally, he had no understanding that if he refused treatment or to allow a suspicionless search of his (or his cohabitants') property he would be in violation of his supervised release and potentially subject to reincarceration. *Id.* ¶ 8. Had he understood any of this information and the profound consequences of these conditions, Mr. Roche would have would not have signed the waiver. *Id.* ¶ 10.

Common sense dictates that Mr. Roche indeed knowingly and voluntarily in signing away his challenge to these conditions. There is no reason why Mr. Roche would elect to *add* conditions of supervised release before consulting with his counsel to discuss the import of these conditions or *why* they were added (the waiver had no explanation). There is no reason he would sign up for potentially endless in-patient "treatment" when he has not used drugs in three years (and marijuana at that). There is no reason he would agree to searches without any reasonable suspicion, particularly when he has no history of violence or drug dealing, or less than a perfect record under supervision, and where he lives in another person's house. The only logical explanation for his waiver is what he says in his declaration: that he did not know the rights he was waiving, did not understand what liberties he was giving up, and thought he needed to sign the waiver to get out to a halfway house and be supervised in Arizona. *See United States v. Poe*, 220 F. App'x 446, 449 (8th Cir. 2007) (remanding for fact-finding or hearing with counsel where defendant alleged he was told that he needed to sign

waiver to get out faster and district court did not examine the validity of the waiver). Mr. Roche had nothing to gain by signing the form, except a false assurance that it would help him get out of prison faster and an implication that this was the only way to be supervised in Arizona. That he was misled in that regard also comports with common sense. As the Seventh Circuit has observed:

> A recurrent problem regarding waivers of objections to conditions of supervised release is that because the conditions don't take effect until the defendant is released from prison and criminals often have a high discount rate (meaning they give little weight to events in the future other than the immediate future), a defendant sentenced to a long term of prison . . . is quite likely to register no interest in the conditions without prompting by his lawyer; this underscores the importance of guidance from the lawyer and careful inquiry by the judge.

*United States v. Hill*, 818 F.3d 342, 344 (7th Cir. 2016). Similarly here, Mr. Roche placed weight on the assurance that he could be out of prison more quickly if he signed the form, which he understood as a standard form to get out of prison, and not understanding that he was agreeing to significant changes in his 36-month long supervised release.

Finally, as explained *infra*, there is no reasonable relationship between Mr. Roche's conduct and the modifications to satisfy the relevant 3553 factors. Any reasonable defendant would have objected to the proposed conditions had he understood them because the conditions are entirely unrelated to and uncalled for by the Section 3553 factors; that Mr. Roche *declined to object* shows he lacked such understanding.

As Courts examining the Rule 32.1 waiver have found, because of the profound liberty interests at stake in imposing *additional* conditions of supervised release (the revocation of which could result in imprisonment), a probing inquiry into the validity of a challenged waiver is warranted. *See, e.g.*, *Correa-Torres*, 346 F.3d at 21 (requiring examination of totality of circumstances for a waiver that is alleged to be invalid); *United States v. Hodges*, 460 F.3d 646, 652 (5th Cir. 2006) (also finding colloquy with district court, though not required, to be ideal for assessing validity of waiver). Thus, in *Hill*, where there was no "careful inquiry" as to the validity of the waiver by the district court, the Seventh Circuit could not "be confident . . . that the defendant was capable of knowingly waiving a challenge to . . . the conditions of supervised release," and remanded the case for such an assessment. *Id.* The same careful inquiry is due here.

II. **The Proposed Conditions Are Not Reasonably Related to Relevant Section 3553 Factors and Do Not Involve A Greater Deprivation of Liberty than Reasonably Necessary for the Purposes of those Factors, and Should Be Rejected.**

By statute, this Court may impose discretionary conditions of supervised release "if the conditions are 'reasonably related' to factors set forth in 18 U.S.C. § 3553 and 'involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes' identified in that section." *Malenya*, 736 F.3d at 559 (quoting 18 U.S.C. § 3583(d)(1), (2)). That inquiry involves an "individualized assessment" in both respects. *United States v. Matthews*, 47 F.4th 851, 855 (D.C. Cir. 2022).

8

Notably, the Court "must not only find the condition to be reasonably related to Congress's goals as related to the defendant but must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes." *Malenya*, 736 F.3d at 559.

  Here, neither condition proposed in the Petition (and agreed to by this Court) is justified by the individualized assessment called for by statute. As to the drug treatment condition, the Petition states that Mr. Roche acknowledged "multiple instances of drug use" in his presentence investigation and that drug treatment would "address [his] cognitions" related to drug abuse (ECF 96 at 2). This purported justification is both generalized and unsupported. As reflected in the PSR, Mr. Roche reported drug use in his teenage years—i.e., over a decade ago. ECF 68 at 21. He reported no significant drug use in the last six years and had not used marijuana since May 2021. *Id.* Moreover, both of his parents cited no substance abuse issues in the last decade, and Mr. Roche's 2023 drug testing results were negative. *Id.* There is simply no individualized, reasonable basis given this history to justify drug treatment to address unspecified "cognitions." Indeed, this Court's "Substance Abuse Testing" condition ("The defendant must submit to substance abuse testing to determine if he has used a prohibited substance. He must not attempt to obstruct or tamper with the testing methods.") is more than sufficient to address any concerns Probation may have as to Mr. Roche's drug use "history," especially where there is no evidence that he used any drug other than marijuana in

9

the recent past. In fact, even the substance abuse testing condition already imposed by this Court is broader than what is required by Section 3583(d), which requires "a drug test within 15 days of release . . . and at least 2 periodic drugs tests thereafter . . .."

The proposed substance abuse treatment condition also orders Mr. Roche into drug treatment *without even assessing him* and in the absence of a positive drug test, which is not only a greater deprivation of liberty than is reasonably necessary given that Mr. Roche has no drug abuse issue, but also a waste of resources. Probation offers no reason why Mr. Roche should be forced into treatment for a problem he does not have, without any assessment of need. As written, the condition does not limit the type or duration of treatment at all (and could result in Mr. Roche being told to attend in-patient treatment for months or years). At a minimum, if this Court considers Mr. Roche's use of marijuana three years ago concerning, this Court should order a substance abuse needs assessment, or order substance abuse treatment only if Mr. Roche tests positive for drug use.

As to the condition allowing suspicionless searches, again, the Petition offers no assessment under Section 3583. Such a condition is not an ordinary condition of supervised release (except for sex offenders) and Probation has not offered any justification tying this condition to Section 3553 factors as required by statute. The only stated justification (that this condition "will assist the probation office in further proactive measures to identify possible risk to the community") is generic; it

applies to *every single case*. In cases where such a condition is deemed permissible, defendants have been far more hardened criminals who present a risk of smuggling drugs or hiding illicit material. *See, e.g.*, *United States v. Fornes*, 665 F. App'x 615, 616 (9th Cir. 2016) (finding suspicionless search condition reasonable "'based on the underlying nature of [defendant's] conviction, which is possession with intent to distribute a large quantity of heroin'" and "'given the substance abuse issues'"). Mr. Roche is far, far from such an offender.

Finally, it is worth mentioning that there are no changed circumstances since sentencing that would warrant the additional conditions mentioned in the Petition. *See United States v. Legg*, 713 F.3d 1129, 1134 (D.C. Cir. 2013) (noting a defendant could ask "district court to modify the challenged conditions *in light of changed circumstances*, which the court is statutorily authorized to do"). The Petition cited no recent misconduct with drugs or otherwise that would justify *adding* significantly onerous conditions to Mr. Roche's supervised release. In the absence of changed conditions justifying the imposition of the additional conditions, such conditions are unwarranted.

## Conclusion

For these reasons, Mr. Roche requests that the Court grant his Motion for Reconsideration and vacate the recommended conditions of supervision. At a minimum, Mr. Roche requests a hearing in the presence of his counsel before any new conditions take effect.

Respectfully Submitted,

A. J. KRAMER

Federal Public Defender for the
District of Columbia

by:_____s/_____
Isra J. Bhatty
Assistant Federal Public Defenders
625 Indiana Avenue, NW
Washington D.C. 20004
202 208-7500